Craig H. Durham
FERGUSON DURHAM, PLLC
223 N. 6th Street, Suite 325
Boise, Idaho 83702
T: (208) 724-2617
F: (208) 806-9663
chd@fergusondurham.com
ISB No. 6428

Attorney for Defendant Watson

**UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF IDAHO**

| | |
|---|---|
| UNITED STATES OF AMERICA, <br>       Plaintiff, <br><br> v. <br><br> TYLER JAY WATSON, <br>       Defendants. | Case No. 1:22-cr-00149-BLW <br><br> **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO SUPPRESS** |

  The Court has given the parties an opportunity to address *United States v. Estrella*, 69 F.4th 958 (9th Cir. June 6, 2023), and its application to the present case. Dkt. 38.

  To justify a "parole search" under established Ninth Circuit law, a police officer

1

must know that a detainee is on parole and that the detainee is subject to a search and seizure waiver as a condition of his or her parole. *United States v. Caseres*, 533 F.3d 1064, 1075–76 (9th Cir. 2008). In *Estrella*, a panel of the Ninth Circuit addressed what it perceived to be an issue of first impression, which was "how precise that knowledge must be." *Id*. It held that probable cause is the appropriate standard: "it is sufficient for the officer to determine, using well-established rules governing probable cause, that the individual to be detained and searched is on active parole, and that an applicable parole condition authorizes the challenged search or seizure." *Id*.

*Estrella* is not final as of the filing of this supplemental memorandum. Estrella's appellate counsel requested an extension of the time in which to file a petition for rehearing. *See* Court of Appeals Case No. 22-10027, Dkt. 38. Counsel indicated that she intends to file such a petition and that she also needs additional time for amici curiae to file supporting briefs. *Id*. at 2-3. The clerk has granted the extension request, making the petition due on August 21, 2023. Dkt. 39. The absence of a mandate – together with a forthcoming petition for rehearing with amici support – counsels in favor of exercising some caution in relying on *Estrella*'s resolution of an issue of "first impression."

Still, *Estrella* is distinguishable from the present case and does not dictate an outcome in the Government's favor.

The information that the officer knew about Estrella and his parole status was light years beyond what Officer Scott knew about Watson when he stopped him in this

case. In *Estrella*, the officer "had met Estrella personally, reviewed his criminal history, discussed his parole conditions, and maintained contact with his parole officer." 69 F.3d at 972. The officer also knew that Estrella had recently "violated his parole," and that his wearing of an Oakland A's cap immediately before the encounter was a violation of one of his parole conditions because it signified gang membership. *Id.* at 966. The only thing the officer did not know for sure was when Estrella's parole term ended. *Id*. at 966, 972. But what he did know established probable cause.

Officer Scott had nothing like that level of information when he pulled Watson over for not "using his blinker back there" and started asking questions about whether he was on supervision. The Government previously asserted that Officer Coronado had briefed Officer Scott earlier that, among other things, Watson "was currently on parole." *See* Gov't Resp., pp. 2-3. But that was it, and this raises more questions than answers. On parole from where? And for what? Even if true, that slender reed was presumably why Scott wanted confirmation from Watson directly when he stopped him. It is also probably why he did not justify the stop and search in his report as part of a parole waiver.

Which leads to the next point. *Estrella* focuses more on what level of certainty an officer must have about whether a detainee is on parole generally, rather than on the more specific question of what level of certainty an officer must have about *whether the detainee is subject to a search waiver as part of his or her parole conditions*. This perhaps

makes sense, as *Estrella* is a California case. Since 1997, in California, all paroles are required by statute to agree in writing to suspicionless searches and seizures. Cal. Penal Code § 3067(b)(3). The *Estrella* panel concluded that the officer in that case, had probable cause to believe that Estrella was both on parole *and* subject to the statutory parole condition. *See* 69 F.3d at 972. Though it is not entirely clear why the Court believed that because its opinion elides the officer's knowledge of parole status with knowledge of a search condition, it is the only way to harmonize *Estrella* with *Caseres*. There, a different panel of the Ninth Circuit held that knowledge of the parole *condition* authorizing a search or seizure, not just parole status, is a necessary prerequisite to justifying a search under this theory. *See Caseres*, 533 F.3d at 1076 ("Because the record does not establish that Lt. Murphy was aware that Cal. Pen. Code § 3067 applied before he ordered the search of Caseres's car, the search is not justified by the state's interest in supervising probationers.").

To Watson's knowledge, Idaho does not have a statutory waiver requirement for all parolees like California. Such waivers may instead be included within each parolee's conditions of supervision. It therefore cannot be presumed, as it seems to have been in *Estrella*, that an officer in Idaho is aware of a waiver condition in a particular case almost as a matter of law. *Cf. State v. Maxim*, 454 P.3d 543, 550 (Idaho 2019)("We hold that a Fourth Amendment waiver cannot salvage an otherwise unreasonable entry into a home under the Fourth Amendment if the police officers were unaware of the waiver

at the time of the unconstitutional search.").

Even assuming *Estrella* will be binding, then, the Government must show not only that Officer Scott had probable cause to believe that Watson was on parole at the time he pulled him over but that he also had probable cause to believe that Watson had signed a waiver allowing the seizure and search of his property. Given what Watson currently understands the evidence to be, he doubts that the Government will be able to prove that. In any case, there remain factual questions to be resolved after the evidentiary hearing regarding precisely what Officer Scott, or the other involved officers even under a collective knowledge theory, knew about Watson's parole status and search waiver, and when they knew it.

Finally, *Estrella* has nothing to say about the suppression issue that Watson has raised under the Fifth Amendment. *See* Memorandum in Support of Motion to Suppress, pp. 17-23.

Respectfully submitted on this 14th day of July 2023.

/s/Craig H. Durham
Attorney for Tyler Watson

## CERTIFICATE OF SERVICE

I hereby certify that, on July 14, 2023, I filed the foregoing electronically through the CM/ECF system, which caused the parties or counsel to be served by electronic means, as more fully reflected on the Notice of Electronic Filing:

David Morse
david.morse@usdoj.gov

Attorney for the United States

/s/Craig H. Durham